[S.F. No. 24396. Nov. 29, 1982.]

UNITED AIR LINES, INC., Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD,
Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

**COUNSEL**

Paul M. Tschirhart, Jean C. Gaskill, Kathleen Lucas-Wallace, Rebecca D. Strause and Brobeck, Phleger & Harrison for Plaintiff and Appellant.

Elise Brody Manders, Keith Tohru Yamanaka and Robert A. Heron for Defendant and Respondent.

Michael D. Mason, Abby Ginzberg and Frank E. Fernandez for Real Party in Interest and Respondent.

Charles P. Scully, Donald C. Carroll, Charles P. Scully II, George A. Pappy, Pappy, Kaplon, Vogel & Phillips, Joseph R. Colton, Norback, DuRard, Colton, Gangemi & Schuler, Robert A. Bush, Taylor, Roth & Hunt, Félix Velarde-Muñoz and Joan Messing Graff as Amici Curiae on behalf of Defendant and Respondent and Real Party in Interest and Respondent.

OPINION

KAUS, J.—

I

In 1976, an engineer from the California Division of Occupational Safety and Health (the division) inspected the United Airlines ground maintenance facility at San Francisco International Airport. As a result of his observations, the division cited and fined United for failing to provide a guardrail on an unenclosed elevated work platform that was being used by an employee working on a plane.[1]

United appealed the citation to the Occupational Safety and Health Appeals Board (appeals board) and filed a motion to dismiss, arguing, inter alia, that under Labor Code section 6303, subdivision (a)—which defines the places of employment over which the division has jurisdiction—the Federal Aviation Administration· (FAA) and not the division has exclusive occupational safety jurisdiction over the maintenance facility. The current provisions of section 6303, subdivision (a)—which all parties agree should be applied in this case —exempt a "place of employment" from the division's jurisdiction if "the health and safety jurisdiction" over that place of employment is "vested by law in, and actively exercised by" any other state or federal agency.[2]

---

[1]The citation alleged a violation of title 8, California Administrative Code, section 3642, subdivision (a)(1) which provides: "The platform deck shall be equipped with: (1) A guardrail or other structure around its upper periphery that shall be no less than 38 inches or more than 45 inches high, with a midrail. (Chains or the equivalent may be substituted across a ladder or stair opening where they give equivalent protection.) Where the guardrail is less than 42 inches high employees shall wear a safety belt securely fastened to the platform by a lanyard so secured that the employee cannot free fall more than 4 feet."

[2]Section 6303, subdivision (a) currently provides in full: " 'Place of employment' means any place, and the premises appurtenant thereto, where employment is carried on, except a place the health and safety jurisdiction over which is vested by law in, and actively exercised by, any state or federal agency other than the division." Unless otherwise indicated, all statutory references are to the Labor Code.

At the time the citation in question in this case was issued, the exemption in section 6303, sub-

At a hearing before an administrative law judge (ALJ), United introduced a copy of its "maintenance manual" developed under FAA regulations. The FAA requires carriers to prepare and keep current such manuals ". . . for the use and guidance of flight and ground operations personnel . . ." in conducting operations. (14 C.F.R. § 121.133(a).) The manuals must contain, inter alia, instructions necessary to allow workers to perform their responsibilities with a "high degree of safety." (*Id.*, at § 121.135(a)(1).) United's manual included a provision requiring employees to wear safety harnesses when working on elevated platforms.[3]

A United Airlines engineer testified that the manuals are submitted to the FAA and considered "approved" unless the carrier is notified otherwise. He also testified that the FAA conducts inspections and has cited United for violations of manual procedures affecting inflight safety. He was not aware, however, of any instance in which the FAA had cited the airline for a violation of any provision relating solely to the safety of ground maintenance employees.[4]

The ALJ found that although the FAA exercised safety jurisdiction as to the passengers, aircraft and cargo, the evidence failed to show any exercise of safety jurisdiction over ground employees. Accordingly, the citation was upheld.

---

division (a) varied from the current language in two respects: (1) it did not expressly include a requirement that the other agency "actively exercise" its jurisdiction in order to divest the division of jurisdiction, and (2) it curtailed the division's jurisdiction if a place of employment's "safety jurisdiction"—rather than "health and safety jurisdiction"—was vested in another agency. The "actively exercise" and "health and safety" modifications were enacted in 1978. (Stats. 1978, ch. 1248, § 1, p. 4060.) Since 1975, however, the appeals board has been applying an "active exercise" test of its own (see Southern Pacific Transportation, Cal/OSHA Docket Nos. 74-R2D3-193, 194, 195 and 74-R3D1-393, dec. after reconsideration, Oct. 28, 1975), and, at oral argument in this case, United specifically conceded that the division's jurisdiction in this matter should be decided under the current provisions of section 6303, subdivision (a). In any event, it will become clear that in view of our interpretation of the statute the result in this case would be the same under the version of the statute in effect in 1976.

[3]The employee observed during the division's inspection was not wearing a safety harness and the inspecting engineer testified that if the employee had been wearing a harness he would not have cited United for a violation of the division's safety regulation.

[4]The Committee on Government Operations of the United States House of Representatives provides the following further information on the manuals: "[The] manuals are written by aircraft manufacturers and the airline carriers. They become effective after they are submitted by the carriers to the FAA. If the FAA does not disapprove the manual provisions, they are deemed approved and binding on the carriers and may be only [*sic*] safety protection afforded workers. Some of these manual provisions explicitly address occupational safety and health matters, while many others address other matters in a way which substantially affects the health and safety of airline maintenance and ground support personnel." (H.R.Rep. No. 97-393, 97th Cong., 1st Sess., p. 3 (1981).)

The appeals board affirmed, noting that although the FAA could disapprove of a manual, the FAA offered no specific guidance to the airlines on employee safety provisions or their enforcement.

Pursuant to sections 6627-6633, United petitioned the trial court for a writ of mandate to have the board's decision set aside. United argued that the FAA had actively exercised jurisdiction over ground maintenance workers by promulgating regulations requiring the development of maintenance manuals.

The division responded that United's arguments were effectively rebutted by the position of the administrator of the FAA. In a 1977 response to a letter of inquiry, the administrator expressed doubt that the manual procedures were of a regulatory nature, and stated that failure to follow the procedures would not serve as a basis for FAA enforcement action unless a Federal Aviation Regulation had also been violated.[5] The trial court judicially noticed the administrator's statement and denied United's petition. This appeal followed.

## II

California has long looked to a specialized administrative agency to play an important role in protecting the health and safety of working men and women in this state. "In 1913 . . . the Legislature enacted a . . . bill creating the Industrial Accident Commission, and vested that body, inter alia, with broad authority to adopt regulations relating to the safety and welfare of employees. [Citation.] . . . Subsequently, in 1945, the Industrial Accident Commission's broad authority to regulate safety in places of employment was transferred to a new body, the Industrial Safety Board. [Citation.]" (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 720-721 [166 Cal.Rptr. 331, 613 P.2d 579].) In 1973, as part of a comprehensive revision of California's occupational health and safety statutes in response to the Federal Occupational Safety and Health Act of 1970, the Industrial Safety Board was reconstituted as the Occupational Safety and Health Standards Board, and the division of Occupational Safety and Health was designated as the administering entity. (Stats. 1973, ch. 993, §§ 11, 13, pp. 1919-1920.)[6] It is this latter agency whose jurisdiction is challenged in this case.

---

[5]The administrator's statement is contained in Appendix 3 of Hearings on the Subject of Airline Deregulation and Aviation Safety Before a Subcommittee of the House Committee on Government Operations, 95th Congress, First Session, pages 262-263 (1977).

[6]Under the 1973 statute, the division retained its former designation as the Division of Industrial Safety. (Stats. 1973, ch. 993, § 13, p. 1920.) It was renamed the Division of Occupational Safety and Health in 1979. (Stats. 1979, ch. 72, §§ 14, 25, pp. 177, 181.)

The 1973 statute, in language which largely parallels its statutory predecessors, grants the division exceedingly broad authority to enforce regulations to protect the health and safety of employees throughout the state. Section 6307 provides: "The division has the power, jurisdiction and supervision over every employment and place of employment in this state, which is necessary to adequately enforce . . . all laws and lawful standards and orders . . . requiring such employment and place of employment to be safe, and requiring the protection of the life, safety, and health of every employee in such employment or place of employment."

As already noted, section 6303, subdivision (a) creates a limited exemption from the division's broad jurisdiction, excepting from the statutory definition of "place of employment" "a place the health and safety jurisdiction over which is vested by law in, and actively exercised by, any state or federal agency other than the division." (See fn. 2, *ante.*) The issue is the scope of this exemption.

Under the terms of section 6303, subdivision (a), the division is divested of jurisdiction over a place of employment only if two prerequisites are satisfied: (1) the place of employment is one over which the health and safety jurisdiction is vested by law in another agency and (2) that jurisdiction is being "actively exercised" by the other agency. In this case, United contends (1) that the safety jurisdiction over its ground maintenance facility is vested in the FAA by virtue of that agency's statutory authority to enact safety regulations with respect to airline operations and personnel, and (2) that the FAA has actively exercised this jurisdiction by promulgating a regulation requiring the airlines to develop manuals which include the subject of employee safety. The division, in response, asserts that the FAA's mission under the federal act is the protection of the inflight safety of passengers, crew and aircraft, not the health and safety of ground maintenance employees, and that the agency's incidental authority to promulgate regulations affecting employee safety is not sufficient to find that it is vested with "the health and safety jurisdiction over the place of employment" so as to divest the division of jurisdiction under section 6303, subdivision (a). Furthermore, the division argues that the limited regulatory action which the FAA has taken with respect to employee safety—directing employers to devise their own safety standards for inclusion in manuals submitted to the agency—does not constitute the kind of "active exercise" of occupational health and safety jurisdiction that is sufficient to displace the division's regulatory jurisdiction. In our view, both the legislative history of the statute and the past authorities construing the provision support the division's interpretation.

## A.

We begin with the requirement that "the health and safety jurisdiction" over the place of employment be vested in another agency. This portion of the statutory exemption first appeared in California law in 1917. In defining "place of employment" for purpose of the jurisdiction of the Industrial Accident Commission, the 1917 act included an exception for "any place of employment, concerning the safety of which jurisdiction may have been vested by law heretofore or hereafter in any other commission or public authority." (Stats. 1917, ch. 586, § 33, subd. (1), p. 861.) In 1937, when the definition of "place of employment" was codified as section 6302 of the Labor Code, the provision was modified to narrow the exemption to "a place the safety jurisdiction over which is vested by law in any State or Federal agency other than the commission." (Stats. 1937, ch. 90, § 6302, p. 306.) With just a minor change in wording—reflecting the transformation of the administering agency from "commission" to "division"—the Legislature adopted this very definition of "place of employment" when it enacted section 6303, subdivision (a) in 1973. Thus, this portion of the statutory exemption has been a part of California law for more than 60 years.

Viewed in isolation, the "safety jurisdiction . . . vested by law . . . in any . . . other agency" language could conceivably be read to apply whenever another agency simply has the *power* or *authority* to enact safety regulations applicable to a particular place of employment, and not only when the other agency has been *specifically mandated* to protect worker safety. From the outset, however, it was quite clear that the Legislature never intended a broad exemption from the division's jurisdiction. A separate provision of the 1917 act, while recognizing that cities and counties retained broad authority under their police power to enact safety regulations for the benefit of workers, at the same time specified that the existence or exercise of such authority would *not* divest the Industrial Accident Commission of jurisdiction over employment conditions in those municipalities. Instead, the commission's safety regulations would provide a minimum standard that a city or county could exceed. (Stats. 1917, ch. 586, § 46, p. 864.[7] See *Campbell* v. *Fong Wan* (1943) 60 Cal.App.2d 553, 558 [141 P.2d 43].)

---

[7]The provision read in relevant part: "Nothing contained in this act shall be construed to deprive . . . any county, or city . . . or any other public corporation or board or department, of any power or jurisdiction over or relative to any place of employment; *provided*, that whenever the [Industrial Accident Commission] shall, by order, fix a standard of safety for employments or places of employment, such order shall . . . establish a minimum requirement concerning the matters covered by such order and shall be construed in connection with any local order relative to the same matter and to amend or modify any requirement in such local order not up to the standard of the order of the commission."

The authorities which interpreted the statute confirmed the narrow scope of the exemption. In *Lehmann* v. *L. A. City Board of Education* (1957) 154 Cal.App.2d 256 [316 P.2d 55], the defendant district contended that because school districts had the authority to enact safety regulations with respect to employment on school district property, the statutory exception applied and rendered the Industrial Safety Board's regulations ineffective. The Court of Appeal rejected that contention, holding that "[s]afety jurisdiction has not been vested in school districts so as to make adoption of regulations mandatory, and the possession of discretionary powers in that field, which may or may not be exercised by school districts, does not relieve them of the duty to conform to the uniform regulations of the division." (154 Cal.App.2d at p. 261.) (See also *Davis* v. *Pine Mountain Lbr. Co.* (1969) 273 Cal.App.2d 218, 226 [77 Cal.Rptr. 825] (California Highway Patrol's jurisdiction over safety on public highways does not displace safety board's regulations with respect to employment condition on highways).)

Even more closely in point is a 1959 opinion of the California Attorney General, discussing the applicability of the Industrial Safety Board's regulations to a place of employment under the jurisdiction of the San Francisco Port Authority. (32 Ops.Cal.Atty.Gen. 282 (1959).) At the time, section 1735 of the Harbor and Navigation Code provided that "[t]he [Port A]uthority shall adopt such rules and regulations as may be necessary to the *safe,* convenient and efficient operation of the port facilities under its jurisdiction" (italics added), and the question was raised whether this statutory authority divested the Division of Industrial Safety of jurisdiction. The Attorney General's opinion concluded that "[w]hile section 1735 provides that the Port Authority is to adopt rules and regulations with regard to the safe operation of port facilities, we do not feel the section is sufficient to vest the safety jurisdiction over places of employment in the harbor of San Francisco in another state agency, the Port Authority, within the meaning of the exception clause in section 6302 of the Labor Code. Section 1735 is too narrowly drawn to accomplish this purpose and, in our opinion, is merely a provision empowering the Port Authority to adopt such rules and regulations as are necessary to comply with the general requirements imposed by sections 6400 and 6401 requiring the Port Authority and all other state agencies to maintain a safe place of employment." (32 Ops.Cal.Atty.Gen. at p. 286.)

In our view, the FAA's jurisdiction over United's ground maintenance facility is directly analogous to that of the San Francisco Port Authority over the San Francisco harbor. The Federal Aviation Act empowers the FAA to " . . . promote safety of flight of civil aircraft in air commerce. . . . " (49 U.S.C. § 1421(a).) Among other things, the administrator is authorized to prescribe rules, regulations and minimum standards governing "in the interest of safety"

the inspection, servicing and overhaul of aircraft (*id.,* at § 1421(a)(3)), the maximum hours or periods of service of employees (*id.,* at § 1421(a)(5)), and other practices, methods and procedures which the administrator may find necessary to provide adequately for safety in air commerce. (*Id.,* at § 1421(a)(6).) It is under these sections that the FAA promulgates rules requiring the development of the maintenance manuals. (See 14 C.F.R. § 121.133(a).)

Although, as United claims, 49 United States Code section 1421 (a)(3), (5) and (6) indicate that the Federal Aviation Act contemplates some regulation of ground employee practices, the division rightly contends that all provisions developed by the FAA under subdivision (a)—including the requirement of maintenance manual development—are primarily directed at inflight safety. A common sense reading of the section, with attention to the subclassification system, shows that subsections (3), (5) and (6) must be interpreted as means of accomplishing the sole directive in subdivision (a): the promotion of "safety of flight." This construction is consistent with subdivision (b) which directs the administrator to " . . . exercise and perform his powers and duties under [the] chapter in such manner as will best tend to reduce or eliminate the possibility of, or recurrence of accidents in air transportation. . . . " (*Id.,* at § 1421(b).) It also comports with the purpose of the act as stated by the federal courts: to assure the safety of passengers, crew members and those on the ground who might be endangered by accidents from unsafe flying conditions. (*Rauch* v. *United Instruments, Inc.* (3d Cir. 1976) 548 F.2d 452.)

This is not to say that the FAA lacks the authority to issue any regulations relating to the health and safety of ground maintenance personnel. As the *Lehmann* and *Port Authority* opinions indicate, however, the exemption of section 6303, subdivision (a) does not come into play simply because there is another agency that has the power or discretion to enact some regulations affecting employee health or safety. Instead, the exemption applies only in much narrower circumstances, when the other agency in the picture—like the division itself—has been *specifically mandated* to regulate the working environment within its aegis for the protection of the employees' health and safety. As the *Lehmann* decision explained, the exception in section 6303, subdivision (a) was not adopted because the Legislature believed that employees who work at places of employment that fall within the exception should be subjected to unsafe or unregulated working conditions. (154 Cal.App.2d at p. 261.) Instead, the statutory exception simply reflects a legislative assumption that the division's jurisdiction is not necessary when the exemption applies because the safety of the place of employment will be adequately protected by another agency. (*Ibid.*) That assumption may well be reasonable when the statutory mission of the other agency is, at least in part, to protect occupational health and safety.

Such an assumption is not invariably warranted, however, when the other agency has been established for an entirely different purpose and may not have the expertise or the inclination to take measures necessary to safeguard employees in all aspects of their work.

We have held in the past that the Labor Code is to be liberally interpreted to achieve a safe work environment (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 313 [118 Cal.Rptr. 473, 530 P.2d 161]) and that the allocation of health and safety jurisdiction between different agencies should be construed in a manner that minimizes any potential gap in coverage. (See *Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d 690, 724.) To allow the mere mention of safety in another agency's enabling legislation to displace the division would be totally out of step with this approach. On the other hand, the narrow interpretation of the exemption adopted by the past authorities furthers the broad remedial purposes of the legislation.

Thus, we conclude that because the FAA—like the school district in *Lehmann* and the San Francisco Port Authority—is not statutorily mandated to protect the health and safety of workers, it is not "vested by law" with the "health and safety jurisdiction" over a place of employment within the meaning of section 6303, subdivision (a), so as to oust the division of jurisdiction.

In arguing against this interpretation of section 6303, subdivision (a), United relies heavily on a decision of the Federal Occupational Safety and Health Commission construing a statutory exemption contained in the Federal Occupational Safety and Health Act of 1970. In *Secretary of Labor* v. *Northwest Airlines, Inc.,* OSHRC Docket No. 13649 (1980) [1980 OSH Dec. (CCH), ¶ 24,751] (*Northwest*), the federal review commission held that under section 653(b)(1) of title 29, United States Code,[8] the Federal Occupational Safety and Health Administration (Fed/OSHA) was exempted from regulating a working condition of a maintenance employee servicing an airplane when a safety provision relating to that working condition was included in an airline maintenance manual. United asserts that the *Northwest* decision is controlling in this case on two separate grounds, but neither contention withstands analysis.

United initially argues that since the state agency draws authority from the Federal Occupational Safety and Health Act (see 29 U.S.C. § 667), the division cannot exceed the jurisdictional limits placed on Fed/OSHA by 29 United States Code section 653(b)(1) as interpreted by such decisions as *Northwest.*

---

[8]Section 653(b)(1) provides in full: "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42 [the Atomic Energy Act], exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."

This contention, however, misperceives the nature of the federal/state relationship established by the federal act.[9]

Congress adopted the federal act in 1970 to address the problem of uneven and inadequate state protection of employee health and safety. In order to establish a nationwide "floor" of minimally necessary safeguards, the 1970 act authorized the Secretary of Labor to promulgate and enforce national occupational safety and health standards and established Fed/OSHA to administer the act.

Despite a broad authorization to Fed/OSHA to " . . . assure . . . every working man and woman . . . safe and healthful working conditions . . . " (29 U.S.C. § 651(b)), the act did not foreclose other federal agencies or states from exercising such jurisdiction. As already noted, section 653(b)(1)—the provision at issue in *Northwest*—provides that: "[n]othing in this chapter shall apply to working conditions . . . with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." In addition, 29 United States Code section 667 provides that a state may continue enforcement of its own standards if no pertinent federal standard is in effect, or if the state has submitted an acceptable plan for the development and enforcement of standards. (*Id.*, at § 667(a)-(e).) It was in response to section 667 that the California Legislature enacted the California Occupational Safety and Health Act of 1973. (§ 6300 et seq.)

Under the section 667 scheme, California is preempted from regulating matters covered by Fed/OSHA standards unless the state has adopted a federally approved plan. The section does not, however, confer federal power on a state—like California—that has adopted such a plan; it merely removes federal preemption so that the state may exercise its own sovereign powers over occupational safety and health. (See, e.g., *American Federation of Labor, etc.* v. *Marshall* (D.C.Cir. 1978) 570 F.2d 1030, 1033; *Green Mt. Power* v. *Com'r of Labor and Industry* (1978) 136 Vt. 15 [383 A.2d 1046, 1051]. See also 29 U.S.C. § 651(b)(11).) There is no indication in the language of the act that a state with an approved plan may not establish more stringent standards than those developed by Fed/OSHA (see *Skyline Homes, Inc.* v. *Occupational Safe-*

[9]Our discussion of the federal/state relationship is partially drawn from a memorandum by the Solicitor General in response to the United States Supreme Court's invitation to express the views of the United States in a then pending petition by United.

Before decision by the trial court in this case, United had filed a federal injunction action to enjoin the division's enforcement of California occupational safety and health laws. The Ninth Circuit reversed the district court's preliminary injunction for lack of jurisdiction on grounds that the controversy was based on state law. (*United Air Lines* v. *Division of Indus. Safety, etc.* (9th Cir. 1980) 633 F.2d 814, cert. den. (1981) 454 U.S. 944 [70 L.Ed.2d 255, 102 S.Ct. 485].)

*ty & Health Appeals Bd.* (1981) 120 Cal.App.3d 663, 671 [174 Cal.Rptr. 665]) or grant to its own occupational safety and health agency more extensive jurisdiction than that enjoyed by Fed/OSHA. A state is required only to provide a program "at least as effective" as Fed/OSHA's. (29 U.S.C. § 667(c)(2).) Thus, contrary to United's claim, the federal act does not limit the division's jurisdiction to that exercised by Fed/OSHA.[10]

United alternatively claims that even if this court is not *compelled* to follow *Northwest*'s limitation on Fed/OSHA's jurisdiction, that decision should nonetheless be found persuasive as an authoritative interpretation of a federal statute on which the state exemption was modeled. (See, e.g., *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665].) As we have seen, however, section 6303, subdivision (a)'s exception clause was not modeled on section 653(b)(1) of the federal act, but instead derives from a long line of California statutes dating back to 1917. Furthermore, the differences between the federal and state exceptions are significant: the federal exemption applies only to a "working condition" over which another agency has exercised jurisdiction, while the state exemption extends to an entire "place of employment." Under the federal scheme, there may be relatively little risk to employees in applying the exemption to an agency which is not specifically mandated to protect occupational health and safety, since the exemption only attaches to those "working conditions" as to which the agency has actually prescribed or enforced regulations affecting occupational safety or health and does not prevent Fed/OSHA from protecting employees with respect to other nonregulated working conditions. On the other hand, since the state exemption removes an entire "place of employment" from the division's jurisdiction, a narrower interpretation is warranted in order to ensure that employees are not left without effective health and safety protection.

Finally, United asserts that an interpretation of section 6303, subdivision (a) which allows both the division and the FAA to regulate its ground maintenance facility will subject it to chronic uncertainty over whose regulations command compliance for a particular procedure or hazard. It appears, however, that United greatly exaggerates the potential for conflict. Although United contends that the FAA desires to regulate all aspects of ground maintenance safety, the materials before us suggest that the FAA is by no means fighting for the broad jurisdiction which United would thrust upon it. In an amicus brief filed in the *Northwest* case, the FAA stated " . . . it is not necessary to decide whether FAA has exclusive authority by statute to regulate all aspects of the occupa-

---

[10]Fed/OSHA reached the same conclusion in a 1978 Program Directive: " . . . [653(b)(1)] limitations are strictly binding only on the Federal program. Therefore, a state may choose to exercise greater jurisdiction under its own law than is allowed to Federal OSHA. Any maximum limitation on State jurisdiction would be determined under that State law and other Federal law and applicable court decisions." (Program Directive No. 77-5 (Oct. 30, 1978).)

tional safety of airline maintenance personnel . . . . FAA does not assert such broad authority." And in a letter written in February 1982 to an amicus in this case, the deputy chief counsel of the FAA expanded on the agency's position, noting that the FAA has only "limited safety and health jurisdiction . . . in the [United] maintenance facility" and explaining that "[t]he FAA's authority in this regard is limited by its statutory grant and may not be expanded by the FAA or an airline. Thus, the FAA cannot require an airline to include a provision in its manual concerning the potability of drinking water in its maintenance facility; nor, if an airline included such a provision in its manual, could the FAA require that it be followed."[11] Consequently, in the many areas of employee safety and health that do not implicate inflight safety, no conflict between the two agencies is apparent.

Furthermore, when inflight safety *is* directly involved, the division acknowledges that, under traditional supremacy clause principles, any safety regulation promulgated by the FAA would necessarily take precedence over a conflicting division regulation. In this regard the division stresses that it has no desire to endanger the safety of passengers, crew members or airplanes. Indeed, as already noted, the division's investigating engineer testified in the administrative hearing in this case that had the employee observed during the inspection been wearing a safety harness, as required in United's manual, United would not have been cited.[12] Thus, if any conflicts do arise in the future, they may well be resolvable by mutual accommodation of the affected agencies. (Cf. *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 196-200 [172 Cal.Rptr. 487, 624 P.2d 1215].)

In sum, United's position boils down to a claim that the mere potential for conflict between the FAA and the division in some aspects of occupational safe-

---

[11]The specific question of the FAA's position as to its jurisdiction over guardrails on elevated platforms was raised at a congressional hearing in August 1980. At that hearing, Jonathan Howe, deputy director of the Northwest Region of the FAA, stated that while the FAA was concerned about some safety requirements of Fed/OSHA which involved "cutting holes in airplanes" and "using types of solvents," "where it is a matter . . . concerning protective railings around platforms[,] [t]hat is not an area that the FAA has any expertise or interest in." (Hearing Before a Subcommittee of the House Com. on Gov. Operations, 96th Cong., 2d Sess., p. 180 (Aug. 16, 1980).) When asked about this particular litigation, Howe stated: "I think if we were asked what our position would be, it would be . . . that this is a matter between the State of California and United Airlines. . . . We do not have jurisdiction." (*Id.*, at p. 182.)

[12]At a number of points during this proceeding, United has suggested that a guardrail requirement may endanger inflight safety because of the possibility that a guardrail may scratch or even puncture the aluminum skin of an airplane. United's own ground safety engineer testified, however, that the airline "use[s] guardrails on numerous vehicles in the servicing of the aircraft," and that a safety harness and lanyard are generally used only when there is the possibility of damaging the airplane because of the positioning of the maintenance lift truck. The engineer also testified that with respect to the specific maintenance operation that led to the administrative citation in this case, a guardrail could have been installed with no danger to the airplane.

ty and health regulation is sufficient to oust the division of jurisdiction. As we have seen, however, prior decisions interpreting the statutory exception have uniformly rejected such a construction. Accordingly, we conclude that the FAA is not vested with such authority over occupational safety and health at United's ground maintenance facility so as to divest the division of jurisdiction over that facility.

## B.

Furthermore, even if the FAA were vested with the requisite jurisdiction to satisfy the initial requirement of section 6303, subdivision (a)'s exemption, the judgment would still stand because we conclude that the FAA's limited actions with respect to employee health and safety do not constitute the "active exercise" of jurisdiction which the statute also demands.

The "active exercise" clause was added to the statute in 1978. (Stats. 1978, ch. 1248, § 1, p. 4060.) The 1978 amendment, originally Assembly Bill No. 3282, was introduced on behalf of the Department of Industrial Relations, Division of Occupational Safety and Health. An analysis of the bill prepared by staff counsel of the Department of Industrial Relations, at the request of a consultant to the Assembly Labor Relations Subcommittee on Industrial Safety, reveals that it was introduced to address the occupational health and safety of railroad employees. The analysis provides the following specifics.

Before the 1978 amendment, jurisdiction over railroad employees was partially vested in both the Federal Railroad Administration and the California Public Utilities Commission. However, neither agency had mandated specific requirements on railroad worker safety or had assessed fines for violation of existing safety rules. In short, neither agency had developed a comprehensive body of safety regulations for railroad employees, though the PUC did require the railroads to file present rules and regulations of their operating department with the commission. Like United's maintenance manual, the rules and regulations included provisions affecting employee safety.

The seriousness of an absence of comprehensive safety regulations was compounded by the division's lack of jurisdiction over the workers. By statute, the division's jurisdiction over workers employed by long-line railroads was limited to "shop" employees (see former Lab. Code, § 6800, subd. (a), enacted Stats. 1917, ch. 201, § 1, p. 296; *Division of Industrial Safety* v. *Municipal Court* (1976) 61 Cal.App.3d 696 [132 Cal.Rptr. 573]), resulting in a denial of health and safety legislation benefits to many workers.

The 1978 amendment was introduced in response to this jurisdictional void and was designed (1) to broaden the division's jurisdiction beyond shop employees (see Stats. 1978, ch. 1248, § 2, p. 4060 (amending Lab. Code, § 6800)), and (2) to insure that, as a general matter, the division would not be displaced by the mere existence of unused authority in another agency. Thus, the amendment to section 6303, subdivision (a) was intended to create a jurisdictional test which focused on both the authority to regulate and the exercise of that authority.

In light of this legislative history, we think that the FAA's actions fail to constitute an "active exercise" of jurisdiction over the ground maintenance facility for several reasons.

First, the FAA regulation requiring the airlines to develop maintenance manuals lacks any comprehensive or specific health and safety guidelines or standards, and the manuals themselves address few procedures and hazards not directly affecting the structure of the aircraft and are essentially devoid of references to employee health hazards.[13] We do not believe that the Legislature intended such a tangential treatment of ground employee safety and health to trigger an exemption under section 6303, subdivision (a). As shown, the statutory history proves that an "active exercise" of jurisdiction by the FAA requires, at the very least, the promulgation of a body of rules directly addressing the health and safety of ground maintenance workers.

United contends, however, that since its manual contained a provision regarding safety on unenclosed elevated platforms—the requirement for a safety harness—the FAA did actively exercise jurisdiction with respect to the particular violation cited by the division. The argument is unpersuasive. Since the FAA approves the manuals by a failure to object and offers no positive guidelines, the manual regulations are essentially internal safety regulations. (Cf. *PBR, Inc.* v. *Secretary of Labor* (1st Cir. 1981) 643 F.2d 890, 896-897.) An exemption for all areas covered by the maintenance manual would simply allow self-regulation by the airlines. The report by the House Committee on Government Operations (see *ante,* fns. 4, 13), dealing with the relationship between Fed/OSHA and the FAA, explains the problem: "[The exemption] from OSHA's authority simply encourages airlines to insert general provisions in the manuals governing all aspects of occupational safety and health. Once they do so, they will be exempt from OSHA's requirements, and instead will be subject only to the provisions in the maintenance manuals. The carriers will then be in

---

[13]The House Committee on Government Operations lists the following health hazards, none of which are FAA regulated except incidentally through the regulation of inflight dangers: exposure to radiation, microwaves, carbon monoxide, polynuclear aromatics, chemicals in jet fuel, jet exhaust, cleaning solvents and paints. (H.R.Rep. No. 97-393, 97th Cong., 1st Sess., p. 5 (1981).)

the enviable position of having to comply only with those occupational safety and health regulations which they have decided to include in their own manuals." (H.R.Rep. No. 97-393, 97th Cong., 1st Sess. p. 4 (1981).) We do not believe that the California Legislature intended to divest the division of the authority to protect workers under these circumstances.

Moreover, the FAA has not only failed to promulgate a comprehensive body of rules directly addressing the health and safety of ground maintenance workers, but—at least so far as the present record suggests—it has also failed to undertake any systematic enforcement of those safety measures which are included in the manual. United, relying on several authorities interpreting the federal exemption, argues that no particular level of enforcement is necessary to trigger an exemption. (See, e.g., *Columbia Gas of Pennsylvania, Inc.* v. *Marshall* (3d Cir. 1980) 636 F.2d 913, 918; *Southern Ry. Co.* v. *Occupational Saf. & H. Review Comm.* (4th Cir. 1976) 539 F.2d 335, 339.) The federal statute does contain language which can be read to indicate that an exemption from Fed/OSHA's jurisdiction requires only the promulgation, and not necessarily the enforcement, of rules by another agency.[14] Section 6303, subdivision (a)'s "exercise" requirement, however, contains no such limiting language. In addition, while the analysis of the 1978 amendment proposed by the division's staff counsel does indicate that the 1978 amendment was drafted with the federal "exercise" requirement in mind, the language adopted by the California Legislature is quite clearly more demanding than the federal exemption, divesting the division of jurisdiction only when another agency "*actively* exercises" its jurisdiction, as compared to the federal statute which simply requires an "exercise" of jurisdiction.[15]

In light of the history of the amendment discussed above, and the Legislature's evident concern that the division not be displaced unless another agency is effectively protecting workers by "actively exercising" its jurisdiction, we conclude that the Legislature intended to require at least some degree of enforcement by another agency before divesting the division of jurisdiction. To eliminate the division's jurisdiction before another agency has taken any measures to ensure that safety regulations are in fact being implemented would contravene the primary purpose of California's remedial legislation in this field: the attainment of a safe working environment.

---

[14] 29 United States Code section 653(b)(1) provides for exemption of a working condition "with respect to which other Federal agencies . . . exercise statutory authority to prescribe *or* enforce standards or regulations affecting occupational safety or health." (Italics added.)

[15] The exemption provided by the 1978 amendment is narrower than the federal exemption in another respect as well, authorizing an exemption.only when another agency has both "health *and* safety jurisdiction" over a place of employment, whereas the federal statute provides for an exemption when another agency has exercised authority with respect to either "occupational safety *or* health."

We recognize, of course, that requiring some degree of enforcement by another agency in order to divest the division of jurisdiction may raise potentially troublesome problems, particularly if—as United argues—the effectiveness of other agencies' efforts must be assessed on a continuous basis. These problems, however, cannot properly be evaluated in the abstract, but must be judged in the factual context of a particular case. In the matter before us, the record suggests that the FAA has not undertaken to enforce the occupational safety provisions contained in United's manual; indeed, the deputy general counsel's most recent comments (see p. 773, *ante*) indicate that the agency disclaims any authority over the great bulk of occupational safety and health hazards faced by ground maintenance personnel which do not affect in-flight safety. Under these circumstances, the mere existence of a variety of airline-drafted safety rules "on the books" does not divest the division of jurisdiction.

The judgment is affirmed.

Broussard, Acting C. J., Mosk, J., Richardson, J., Newman, J., Reynoso, J., and Racanelli, J.,* concurred.

---

*Assigned by the Acting Chairperson of the Judicial Council.