[No. C000006. Third Dist. Feb. 19, 1987.]

DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Plaintiff and Respondent, v.
STATE BOARD OF CONTROL, Defendant and Respondent;
ARCADE FIRE DISTRICT, Real Party in Interest and Appellant.

COUNSEL

Ross & Scott, William D. Ross and Diana P. Scott for Real Party in Interest and Appellant.

Michael D. Mason and A. Margaret Cloudt for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Jeffrey J. Fuller and Faith J. Geoghegan, Deputy Attorneys General, for Defendant and Respondent.

OPINION

PUGLIA, J.—In this appeal we consider whether a safety regulation promulgated by the Division of Occupational Safety and Health (Division) of the Department of Industrial Relations mandates increased costs to local

government such that they are reimbursable under the provisions of Revenue and Taxation Code section 2201 et seq.[1] With respect to the period of time in issue, we conclude that the regulation does not create reimbursable state-mandated costs.

On October 8, 1980, Arcade Fire District (Arcade) filed a test claim with the State Board of Control (Board) asserting that title 8, section 5144, subdivision (g), of the California Administrative Code (hereafter referred to as Regulation) imposed additional manpower requirements upon it and other local fire protection districts beyond service levels required prior to January 1, 1973.[2] A local governmental agency (§ 2211), Arcade sought state reimbursement under former section 2231. (Repealed Stats. 1986, ch. 879, § 23; see now Gov. Code, § 17561.) Arcade claimed it incurred additional manpower costs during fiscal years 1978-1979 and 1979-1980 as a result of Regulation 5144, subdivision (g), and that these costs were mandated by the state within the meaning of section 2207.

Section 2207 defines reimbursable " 'Costs mandated by the state.' " They include "any increased costs which a local agency is required to incur as a result of . . . (c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973." An " 'executive order' " includes a regulation issued by a state agency such as the Division (§ 2209, subd. (c)). Specifically excluded from the definition of " '[c]osts mandated by the State' " are " '[c]osts mandated by the federal government' " as defined in section 2206 and former section 2253.2, subdivision (b)(3) (repealed Stats. 1986, ch. 879, § 41; see now Gov. Code, § 17556, subd. (c)).

Regulation 5144, subdivision (g), was first adopted by the Division effective August 11, 1974. As amended effective October 14, 1978, the regulation provides: "In atmospheres immediately hazardous to life or health, at least two persons equipped with approved respiratory equipment shall be on the job. Communications shall be maintained between both or all individuals present. Standby persons, at least·one of which shall be in a location which

---

[1] All references to sections or former sections of an unspecified code are to the Revenue and Taxation Code.

[2] In 1985, administrative jurisdiction to hear and decide claims for reimbursement of state-mandated costs was transferred from the State Board of Control to the newly created Commission on State Mandates. (Gov. Code, § 17500 et seq.)

will not be affected by any likely incidents, shall be present with suitable rescue equipment including self-contained breathing apparatus."[3]

At the administrative hearing, Arcade established that it has always adhered to a practice, known as the "buddy system," whereby two firefighters enter a burning structure together. Arcade also presented evidence that the buddy system is considered essential to the safety of both firefighters and the public and is practiced by firefighting agencies nationwide. Prior to the 1974 effective date of Regulation 5144, subdivision (g), Arcade was unaware of any standby requirement and used only two-person teams in its engine companies. After its effective date, Arcade interpreted the regulation to mandate a minimum firefighting team of at least three persons equipped with respiratory equipment, one of whom was required to stand by outside a burning structure while the other two operated together under the "buddy system." In support of this interpretation, Arcade presented evidence that Division inspectors had previously informed local fire protection districts that Regulation 5144, subdivision (g), requires a minimum of three fire fighters at the scene.

In opposition to Arcade's claim, the Division maintained that any costs incurred as a result of Regulation 5144, subdivision (g), were federally mandated because the state regulation merely implemented a federal regulation under the 1979 Federal Occupational Safety and Health Act. (29 U.S.C. § 651 et seq.) Even if a state mandate were involved, the Division contended, Arcade's interpretation of the regulation was erroneous. In the Division's view, Regulation 5144, subdivision (g), requires only two persons to be on the job when atmospheres immediately hazardous to life or health are encountered—one person to stand by in a location unaffected by likely incidents and the other to encounter the dangerous atmosphere itself. While the Division would certainly encourage the use of three-person teams at the option of local fire districts, it takes the position that additional manpower is neither mandated by the express language of the regulation nor, as a matter of official policy, a firefighting standard which the Division seeks to enforce.

The Board found the regulation created a reimbursable state-mandated cost and approved Arcade's claim. The Board apparently concluded the regulation did not "explicitly require three-person companies" but considered its effect nonetheless "was to remove the previously existing option of public fire departments to deploy two-person companies," and that this requirement "exceeded federal and prior state safety regulations."

---

[3]The 1978 amendment deleted from the last sentence the concluding clause "in accordance with Section 5182, Confined Spaces," which had been included in the original version in 1974.

The Division sought mandamus to review the Board's ruling. (See former § 2253.5 repealed Stats. 1986, ch. 879, § 44; see now Gov. Code, § 17559; Code Civ. Proc., § 1094.5.) The superior court found the Board had abused discretion in allowing Arcade's claim and issued a peremptory writ of mandate directing the Board to set aside its decision.

Arcade appeals from the order granting the Division mandamus relief. In challenging the court's conclusion that Regulation 5144, subdivision (g), did not create state-mandated costs, Arcade contends the court (1) applied the wrong standard of review, (2) improperly considered new evidence and legal issues which were not presented at the administrative hearing, and (3) erred in ruling that section 2207, subdivision (f), did not apply.

I

Preliminarily, we set forth the applicable standard of review. In an administrative mandamus proceeding, we are bound by the Board's findings on all issues of fact within its jurisdiction which are supported by substantial evidence on the record. (See former § 2253.5; Gov. Code, § 17559.) ■ The interpretation of an administrative regulation, however, like the interpretation of a statute, is a question of law ultimately to be resolved by the courts. (*Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; *Skyline Homes, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1981) 120 Cal.App.3d 663, 669 [174 Cal.Rptr. 665]; see also *People* ex rel. *Fund American Companies* v. *California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623].)

Where the substantial evidence test applies, the superior court exercises an essentially appellate function in determining whether the administrative findings are supported by substantial evidence and the proceedings free from legal error; the scope of our appellate review is coextensive with that of the superior court. (*Bank of America* v. *State Water Resources Control Bd.* (1974) 42 Cal.App.3d 198, 207 [116 Cal.Rptr. 770]; *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182, 190 [203 Cal.Rptr. 258], disapproved on other grounds in *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 58 , fn. 10 [233 Cal.Rptr. 38].; see also *Swaby* v. *Unemployment Ins. Appeals Bd.* (1978) 85 Cal.App.3d 264, 269 [149 Cal.Rptr. 336].) We therefore focus our review on the administrative proceedings, declining to consider specific claims of error committed by the superior court.

We shall also consider, as a preliminary matter, whether a federal mandate or an equally or more restrictive pre-1973 state regulation exists which would

bar Arcade's claim for reimbursement. (See §§ 2206; 2207, subds. (c), (f); former § 2253.2, subd. (b)(3).) Although these legal theories may not have been thoroughly developed by the Division in the administrative proceedings, we are not foreclosed from addressing them on appeal. (See *City of Merced* v. *State of California* (1984) 153 Cal.App.3d 777, 781 [200 Cal.Rptr. 642]; *Frink* v. *Prod* (1982) 31 Cal.3d 166, 170-171 [181 Cal.Rptr. 893, 643 P.2d 476].) Such consideration will not involve receipt of evidence not before the Board. The Board found Regulation 5144, subdivision (g), exceeded the requirements of both federal and pre-1973 state safety regulations. Our review necessarily requires that we take judicial notice of any statutes and published administrative regulations which impact upon the contentions of the parties. (See Evid. Code, § 451, subds. (a), (b); Gov. Code, § 11343.6; 44 U.S.C. § 1507.) In any event, Arcade is not prejudiced by our consideration of these issues on appeal because, as will appear, we reject the Division's arguments that a federal mandate or a pre-1973 state regulation bars Arcade's claim.

## II

■ The California Occupational Safety and Health Act (state OSHA; Lab. Code, § 6300 et seq.), from which the Division derives its regulatory authority, was enacted in 1973 (Stats. 1973, ch. 993, §§ 39-107) as a state plan under the Federal Occupational Safety and Health Act of 1970 (federal OSHA; see 29 U.S.C. § 667). In 1974, an uncodified amendment to state OSHA was enacted which provided: "Notwithstanding Section 2231 of the Revenue and Taxation Code [providing for reimbursement to local governments for state-mandated costs], there shall be no reimbursement pursuant to this section . . . because the Legislature finds that this act and any executive regulations or safety orders issued pursuant thereto merely implement federal law and regulations." (Stats. 1974, ch. 1284, § 36, adding § 106 to ch. 993 of the Stats. of 1973.)[4] However, this legislative disclaimer of any reimbursable mandate with respect to state OSHA and regulations thereunder is not controlling here. Former section 2253, subdivisions (b) and (c) as amended (Stats. 1978, ch. 794, § 6; repealed Stats. 1986, ch. 879, § 40), permitted reimbursement claims for costs incurred after January 1, 1978, under an executive order or a bill chaptered after January 1, 1973, even though the bill or executive order contained a provision making inoperative former section 2231. Thus the legislative finding of federal mandate under-

---

[4]Chapter 993 of Statutes 1973 already had a section 106 as part of the original enactment. The original section 106 disclaimed any obligation to reimburse local costs incurred in complying with state OSHA "because the cost of implementing this act is minimal on a statewide basis in relation to the effect on local tax rates." (P. 1954.)

lying state OSHA (Stats. 1974, ch. 1284, § 36) has been superseded and does not in and of itself preclude a finding such as the Board made here that there is no federal mandate preventing reimbursement of Arcade.

Having disposed of the express legislative declaration on the subject, we next consider whether state OSHA, under authority of which Regulation 5144, subdivision (g), was promulgated, in fact did no more than impose costs mandated by federal law.

As defined by section 2206, " '[c]osts mandated by the federal government' " include "any increased costs mandated . . . upon a local agency . . . after January 1, 1973, in order to comply with the requirements of federal statute or regulation." Although an executive order implementing a federal law may result in federally mandated costs in this general definitional sense, former section 2253.2, subdivision (b)(3), as amended in 1978 (see now Gov. Code, § 17556, subd. (c)), provided that state reimbursement is available to a claimant if the executive order mandates costs which "exceed the mandate" of federal law or regulation. (Stats. 1978, ch. 794, § 10, eff. Sept. 18, 1978.)[5]

We accept for purposes of discussion the Division's assertion that Regulation 5144, subdivision (g), simply mandates a safety standard patterned after and commensurate with a regulation promulgated under federal OSHA. Also governing the use of respirators, 29 Code of Federal Regulations, section 1910.134(e)(3) (1986) reads in pertinent part: ". . . (i) In areas where the wearer, with failure of the respirator, could be overcome by a toxic or oxygen-deficient atmosphere, at least one additional man shall be present. Communications . . . shall be maintained between both or all individuals present. Planning shall be such that one individual will be unaffected by any likely incident and have the proper rescue equipment to be able to assist the other(s) in case of emergency. [¶] (ii) When self-contained apparatus or hose

---

[5]Effective January 1, 1981, section 2206 was amended to limit the definition of "costs mandated by the federal government" to increased costs mandated *specifically* by the federal government upon a local agency and to exclude from that definition those costs which result from programs or services "implemented at the option of the state, . . ." (Stats. 1980, ch. 1256, § 3.) Correspondingly, subdivision (d) was added to section 2207 to include within the definition of "costs mandated by the state" any increased costs a local agency is required to incur as a result of a post-1973 executive order which implements or interprets a federal or state regulation and by such implementation or interpretation "increases program or service levels above the levels required by such federal statute or regulation." (Stats. 1980, ch. 1256, § 4; see also Gov. Code, § 17513, which excludes from " '[c]osts mandated by the federal government' " "programs or services which may be implemented at the option of the state, . . . .") While these amendments are supportive of the conclusion we reach, we assume for present purposes they have no retrospective operation with respect to costs incurred by Arcade during fiscal years 1978-1979 and 1979-1980.

masks with blowers are used in atmospheres immediately dangerous to life or health, standby men must be present with suitable rescue equipment."

The federal regulation, unlike the state regulation in issue, has no applicability to local fire departments such as Arcade. By definition, regulated employers under federal OSHA do not include the political subdivisions of a state. (29 U.S.C. § 652(5); 29 C.F.R. § 1910.2(c).)[6] On the other hand, the state OSHA broadly defines the "places of employment" over which the Division exercises safety jurisdiction to include public agency employers within the state. (Lab. Code, § 6303, subd. (a); see also *United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 767 [187 Cal.Rptr. 387, 654 P.2d 157].)

Where a state chooses to adopt its own occupational safety and health plan, the federal OSHA requires as a condition for approval of the plan that the state establish and maintain a comprehensive program which extends, to the extent permitted by state law, "to all employees of public agencies of the State and its political subdivisions." (29 U.S.C. § 667(c)(6); 29 C.F.R. § 1902.3(j).) A state plan, if approved, must also provide for the development and enforcement of safety standards "at least as effective" as the standards promulgated under federal OSHA. (29 U.S.C. § 667(c)(2).) However, these conditions for approval do not render costs incurred by a local agency as a result of a state safety regulation federally mandated costs within the meaning of former section 2253.2, subdivision (b)(3). Clearly, the initial decision to establish locally a federally approved plan is an option which the state exercises freely. In no sense is the state *compelled* to enter a compact with the federal government to extend jurisdicion over occupational safety to local governmental employers in exchange for the removal of federal preemption. (29 U.S.C. § 667(b).) (Accord, *City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at pp. 194-199.)

▪ In *United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd., supra,* 32 Cal.3d 762, the court expressed this principle as follows: "Under the [29 United States Code] section 667 scheme, California is preempted from regulating matters covered by Fed/OSHA [Federal Occupational Safety and Health Administration] standards unless the state has adopted a federally approved plan. The section does not, however, confer federal power on a state—like California—that has adopted such a plan; it merely removes federal preemption so that the state may exercise its own sovereign powers

---

[6]Indeed, to our knowledge the federal government did not assert safety jurisdiction over "private fire brigades until federal regulations on the subject were first published in September 1980. (See 29 C.F.R. § 1910.156(a)(2) and (f)(1)(i); 45 Fed. Reg. 60706, amended May 1, 1981, 46 Fed. Reg. 24557.)

over occupational safety and health. (See, e.g., *American Federation of Labor, etc. v. Marshall* (D.C.Cir. 1978) 570 F.2d 1030, 1033; *Green Mt. Power v. Com'r of Labor and Industry* (1978) 136 Vt. 15 [383 A.2d 1046, 1051]. See also 29 U.S.C. § 651(b)(11).) There is no indication in the language of the act that a state with an approved plan may not establish more stringent standards than those developed by Fed/OSHA (see *Skyline Homes, Inc. v. Occupational Safety & Health Appeals Bd.* (1981) 120 Cal.App.3d 663, 671 . . .) or grant to its own occupational safety and health agency more extensive jurisdiction than that enjoyed by Fed/OSHA." (*United Air Lines, Inc.*, supra, 32 Cal.3d at pp. 772-773.) ■ Thus since Division was not required to promulgate Regulation 5144, subdivision (g), to comply with federal law, the exemption for federally mandated costs does not apply.

### III

■ State regulations which do not *increase* program levels above the levels required prior to January 1, 1973, do not result in "costs mandated by the state" within the meaning of section 2207, subdivision (c). The Division submits that former Regulation 5182, which existed prior to 1973, provided standby personnel requirements which were equal to, if not more stringent than, those set forth in Regulation 5144, subdivision (g). A comparison of the two regulations, however, convinces us that former Regulation 5182 was limited to employees working within tanks, vessels, and similar "confined spaces" and was never intended more broadly to encompass fire fighters working in burning structures.

Subdivision (c) of former Regulation 5182 expressly required at least two persons on the job in addition to the standby employee when conditions necessitated the wearing of respiratory equipment in a confined space.[7] It was not replaced until 1978, when new article 108 (Regulations 5156-5159, Cal. Admin. Code, tit. 8), entitled "Confined Spaces," was added. (Cal. Admin. Notice Register, tit. 8, Register 78, No. 37.) We do not agree with the Division that Regulation 5182 covered fire fighters (see *Carmona* v.

---

[7]As pertinent here, former Regulation 5182 provided: ". . . (b) An approved safety belt with a life line attached or other approved device shall be used by employees wearing respiratory equipment within tanks, vessels, or confined spaces . . . At least one employee shall stand by on the outside while employees are inside, ready to give assistance in case of emergency. If entry is through a top opening, at least one additional employee, who may have other duties, shall be within sight and call of the stand-by employee. [¶] (c) When conditions require the wearing of respiratory equipment in a confined space, at least two men equipped with approved respiratory equipment, exclusive of the employees that may be necessary to operate blowers and perform stand-by duties, shall be on the job. One or more of the employees so equipped may be within the confined space at the same time, provided, however, that this shall not apply to tanks of less than 12 feet in diameter, when entrance is through a side manhole." (Cal. Admin. Notice Register, tit. 8, Register 72, No. 6, dated Feb. 5, 1972.)

*Division of Industrial Safety, supra,* 13 Cal.3d at p. 310). Moreover, we note that the Division's reading of the regulation would undermine, if not invalidate, its alternative position that it has always required only a minimum two-person, firefighting team. Thus if Regulation 5144, subdivision (g), properly interpreted, requires a minimum of three persons as contended by Arcade, it does increase program levels above those required prior to January 1, 1973. Before we address that issue directly, we consider the rationale of the Board's decision.

## IV

The Board's approval of Arcade's claim was based on the conclusion that, although Regulation 5144, subdivision (g), did not expressly require three-person engine companies, its effect was to remove a previous option of local fire districts to use only two person companies. In so concluding, the Board apparently relied on the definition of " '[c]osts mandated by the state' " as expressed in subdivision (f) rather than subdivision (c) of section 2207. Under subdivision (f), costs are mandated and reimbursable when they result from "Any . . . executive order issued after January 1, 1973, which . . . *removes an option previously available to local agencies* and thereby increases program or service levels . . . ." (Italics added.)

Because subdivision (f) did not become effective until January 1, 1981 (Stats. 1980, ch. 1256, § 4), the Division contends the Board could not retroactively apply the removal-of-an-option criterion to Arcade's October 1980 reimbursement claim for costs incurred during fiscal years 1978-1979 and 1979-1980. We agree.

We observe first that the amendment which added subdivisions (d) through (h) to section 2207 significantly expanded the situations in which a claimant could seek reimbursement for " '[c]osts mandated by the state.' " (See *County of Los Angeles* v. *State of California* (1984) 153 Cal.App.3d 568, 572 [200 Cal.Rptr. 394].) Before 1981, the entire spectrum of state-mandated costs was confined to those defined in subdivisions (a) through (c) of section 2207.[8] As the 1980 amendment necessarily increased the state's liability for

---

[8]As amended, section 2207 now reads in full: " 'Costs mandated by the state' means any increased costs which a local agency is required to incur as a result of the following:

"(a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program;

"(b) Any executive order issued after January 1, 1973, which mandates a new program;

"(c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973.

locally incurred costs, it must be construed as substantive rather than procedural or remedial in nature. (See *Alta Loma School Dist.* v. *San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 553 [177 Cal.Rptr. 506].) A statute affecting substantive rights is presumed not to have retrospective application unless the courts can clearly discern from the express language of the statute or extrinsic interpretive aids that the Legislature intended otherwise. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 625, fn. 3 [139 Cal.Rptr. 603, 566 P.2d 237]; *Alta Loma School Dist., supra,* at p. 553.)

Although all of the new subdivisions added by the 1980 amendment to section 2207 expressly deal with executive orders issued after January 1, 1973, nothing has been brought to our attention which would indicate the Legislature intended retroactive operation of the expanded definition to resulting costs *incurred* before the 1981 effective date of the amendment. When section 2207 was originally enacted in 1975, the Legislature provided that subdivisions (a) through (c) were "declaratory of existing law." (Stats. 1975, ch. 486, § 18.6.) However, the 1980 amendment adding subdivisions (d) through (h) conspicuously omits any such statement or other indication of retrospective application. ▆ Moreover, other related statutory provisions make it clear that the Legislature intended strictly to limit the time period within which a reimbursement claim may be brought for costs incurred during a prior fiscal year. (Former § 2218.5, see now Gov. Code, § 17560; former § 2231, subd. (d)(2), see now Gov. Code, § 17561, subd.

---

"(d) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which implements or interprets a federal statute or regulation and, by such implementation or interpretation, increases program or service levels required by such federal statute or regulation.

"(e) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which implements or interprets a statute or amendment adopted or enacted pursuant to the approval of a statewide ballot measure by the voters and, by such implementation or interpretation, increases program or service levels above the levels required by such ballot measure.

"(f) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which (i) removes an option previously available to local agencies and thereby increases program or service levels or (ii) prohibits a specific activity which results in the local agencies using a more costly alternative to provide a mandated program or service.

"(g) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which requires that an existing program or service be provided in a shorter time period and thereby increases the costs of such program or service.

"(h) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which adds new requirements to an existing optional program or service and thereby increases the cost of such program or service if the local agencies have no reasonable alternatives other than to continue the optional program."

(d)(2); former § 2253; former § 2253.8, repealed Stats. 1986, ch. 879, § 45, see now Gov. Code, § 17557.) Hence, we presume that subdivision (f) of section 2207 applies prospectively only to costs incurred by local agencies after its effective date, January 1, 1981, and not before. (Accord, *City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at p. 194, disapproved on other grounds in *County of Los Angeles* v. *State of California, supra,* 43 Cal.3d at p. 58, fn. 10.) Subdivision (f) therefore is not available to support Arcade's claim.

## V

The remaining issue is whether Arcade incurred state-mandated costs within the meaning of subdivision (c) of section 2207. It will be recalled that under subdivision (c) of section 2207, reimbursable costs mandated by the state include "any increased costs which a local agency is required to incur as a result of . . . (c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973."

As recognized by the Board, the problem resides in the ambiguity of Regulation 5144, subdivision (g). No one contests the regulation's applicability to the occupation of fire fighting. ▮▮▮▮▮ But depending on the significance ascribed to certain of its language, e.g., "*In* atmospheres," "on the job," "Communications . . . between *both* or all" (italics added) and "standby persons," the regulation is reasonably susceptible to alternative interpretations: (1) at least two persons must *enter* a dangerous atmosphere, (i.e., to be "on the job" one must be "*in*" the atmosphere) while a third remains outside, (2) at least two persons must stand by (i.e., "standby person*s*") while other(s) perform a job in a dangerous atmosphere,[9] or (3) a total of two persons—one active and one standing by—is all that is required when working in a dangerous atmosphere.

▮▮ In view of these inherent ambiguities, the interpretation given the regulation by the Division as the administrative agency charged with its enforcement is entitled to great weight. (*People* v. *French* (1978) 77 Cal.App.3d 511, 521 [143 Cal.Rptr. 782]; see also *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *Carmona* v. *Division of Industrial Safety, supra,* 13 Cal.3d at p. 310.) We shall defer to the Division's interpretation that the

[9]Notwithstanding the use of the plural ("standby persons"), a general rule of construction is that words used in the singular include the plural and vice versa. (See Lab. Code, § 13; Civ. Code, § 14.) Arcade does not contend the regulation requires more than one standby person.

intended meaning of the regulation, when considered generally and in the abstract, is to require the presence of only two persons using respiratory equipment in workplaces involving hazardous atmospheres. Such deference does not undercut the authority vested in the Board to determine the existence of state-mandated costs under section 2201 et seq. In the exercise of that authority the Board also owes a duty of deference to the administrative agency's interpretation of its regulation. The Board is not licensed to impress its own interpretation upon an administrative regulation in derogation of the reasonable construction of the responsible agency.

In this regard, Arcade contends that substantial evidence supports the conclusion that the practical consequence of Regulation 5144, subdivision (g), is to mandate an increase in firefighting manpower from two to three persons. Viewing as we must the evidence at the hearing in a light most favorable to Arcade, we accept as true the proposition that fire fighting agencies universally consider the two-person "buddy" system essential to the safety of the workers. We also accept as true that Division inspectors previously gave firefighting agencies the impression that three-person teams are a necessary safeguard.

It does not follow, however, that the regulation in question *mandates* an increase in "program levels above the levels *required* prior to January 1, 1973" as defined by section 2207, subdivision (c). (Italics added.) Although founded on safety reasons, the continued practice of using two fire fighters to enter a burning structure while adding a third to meet the requirement of a standby was a choice which rested with the local fire districts. As the Board recognized, the regulation does not expressly require three-person teams nor has the Division issued a citation for failure to use the additional manpower. Verbal exchanges between Division personnel and the fire districts do not rise to the level of a legislative mandate or official policy. Failing proof that it is impossible to fight fires without the use of "buddies," Arcade cannot inject its own safety standards into a state regulation and say it is a "requirement" of the state.

We conclude that Regulation 5144, subdivision (g), did not mandate an increase in Arcade's fire protection costs for the 1978-1979 and 1979-1980 fiscal years. Accordingly, there was no error in the superior court's order directing the Board to vacate its decision allowing Arcade's claim.

The order granting the Division's petition for a writ of mandate is affirmed.

Regan, J., and Sparks, J., concurred.

A petition for a rehearing was denied March 17, 1987.