[Civ. No. 20103. Third Dist. Oct. 23, 1981.]

SOPER-WHEELER COMPANY et al., Plaintiffs and Respondents, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

914

Counsel

George Deukmejian, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Alson R. Kemp, Jr., and Mark H. Penskar for Plaintiffs and Respondents.

Opinion

REYNOSO, J.—The litigants call on this court to resolve two issues of law pertaining to the formula utilized to tax real property which is timberland. We examine and explain the pertinent constitutional, statutory and regulatory provisions. As will be seen, we conclude: First, the immediate harvest value must be averaged on the preceding 20 quarters. Second, for the purpose of taxing land, the timberland values of the pine-mixed conifer region of California are based upon the immediate harvest value of both young and old growth.

I

*Background of Taxation System on Timberland*

To understand the controversy we must understand a bit of its history. Prior to 1974 the taxation system of timberland was such that the taxpayer was required to pay property tax upon land as well as upon the standing timber. Taxation of the timber, could be avoided, however, by harvesting 70 percent or more of the timber over 16 inches in diameter. The timber then would be exempt for a period of 40 years. This system encouraged timberland owners to harvest their timber after 40 years, a practice not in accord with good forestry. (See the Preliminary Rep. of the Sen. Select Com. on Taxation of Timber and Timberland (1975) p. 3.) Another recognized problem with the former method of taxation was that landowners would be encouraged to harvest a portion of their timber every year in order to provide a cash flow to meet current tax requirements; better forestry practices would normally indicate that the tree stand should be allowed to mature. (*Ibid.*)

This counterproductive practice arose because article XIII, section 3, subdivision (j) of the Constitution of California, exempted from property taxation all immature forest trees planted on lands not previously bearing merchantable timber. It also exempted timberland, planted or natural growth from which the merchantable timber (70 percent of all trees over 16 inches in diameter) had been removed.

The Legislature determined to enact an alternative system for the taxation of timber and timberland. The people of the state provided the means in 1974 by adding a paragraph to article XIII, section 3, subdivision (j), which provides: "The Legislature may supersede the foregoing provisions with an alternative system or systems of taxing or exempting forest trees or timber, including a taxation system not based on property valuation. Any alternative system or systems shall provide for exemption of unharvested immature trees, shall encourage the continued use of timberlands for the production of trees for timber products, and shall provide for restricting the use of timberland to the production of timber products and compatible uses with provisions for taxation of timberland based on the restrictions. Nothing in this paragraph shall be construed to exclude timberland from the provisions of Section 8 of this article."

The Legislature then enacted Statutes of 1976, chapter 176. That act provides a comprehensive system for the taxation of timber and timberland. Essentially, the act provides for the taxation of timberland based upon its restriction that it be used for timberland and compatible uses (Rev. & Tax. Code, §§ 431-437), and delays the taxation of timber until it is harvested, at which time a "yield tax" is levied. (Rev. & Tax. Code, § 38101 ff.)

A look at Revenue and Taxation Code section 434.5 and property tax rule 1025 completes our introduction.

Section 434.5 provides for the valuation of timberland for taxation purposes. For March, 1, 1977, up to and including March 1, 1979, the statute provides a set per acre value for timberland in accordance with its region and site classification. (§ 434.5, subd. (a).) Subdivision (b) of section 434.5 provides: "On or before January 1, 1980, and every third year thereafter, the board after consultation with the timber advisory committee and in compliance with procedures set forth for adoption of rules under the Administrative Procedure Act, shall adopt schedules

reestablishing the value of each grade of timberland graded pursuant to Section 434 as if it were bare of forest growth, and recognizing that the restricted use of the land is for growing and harvesting timber and compatible uses. The board shall certify such values to county assessors by January 10 of each year. Such schedule shall remain in effect until subsequent revision pursuant to the provisions of this subdivision."

The method by which the board is required to value timberland is provided for in section 434.5, subdivision (d). The board must base the value of such land upon the existence of a 10-year enforceable use restriction. (§ 434.5, subd. (d)(1).) When the board uses comparable sales to determine value it is required to use property of at least 160 acres with a timberland preserve zone restriction and may not use size or any discount for size or amenities as a factor. (§ 434.5, subd. (d)(2).) Subdivision (e) of section 434.5 provides that the value of each acre of timberland within a timberland preserve zone shall be presumed to be no greater than the value derived under subdivision (f). Subdivision (f) of section 434.5 provides a formula for the determination of the maximum value of timberland within a timberland preserve zone. It is the board's application of this formula which is at issue.

Revenue and Taxation Code section 434.5, subdivision (f), provides: "The board shall:

"(1) Prepare, or cause to be prepared, timberland site capability tables which shall prescribe by site classification the potential annual yield of wood by species or mixture of species per acre.

"(2) Multiply the potential annual yield by 10 percent.

"(3) Multiply the result of paragraph (2) by an immediate harvest value, averaged for the previous 20 quarters, that is appropriate for the geographical area wherein such timberland values shall be applied.

"(4) Divide the result of paragraph (3) by a capitalization rate of 10 percent expressed as a decimal.

"Pursuant to paragraph (2) of this subdivision, the Legislature declares that 10 percent is the average percent of income from potential annual yield of wood that can be attributed to timberland as a productive component contributing to such income, and the Legislature finds

that it is in the public's interest that values derived from analysis of sales of timberland restricted under timberland preserve zones shall not exceed this percentage."

Property tax rule 1025 was adopted by the board on December 11, 1979. It purports to set forth the per acre value of timberland for the years 1980, 1981, and 1982, by site classification. Plaintiffs attack this rule on two grounds, both related to the determination of the "immediate harvest value" for the use in the computation of the maximum value of timberland as set forth in Revenue and Taxation Code section 434.5, subdivision (f). Plaintiffs first argue that the board improperly averaged the immediate harvest value for only 10 quarters rather than for 20 quarters as required in the statute. Second, they argue that immediate harvest value should comprehend only the value of young growth trees and should not include the immediate harvest value of old growth trees. The parties agree that in adopting rule 1025, the board did in fact average immediate harvest value for only 10 quarters, and did use both young growth and old growth immediate harvest value.

## II

A. *Statute requires that immediate harvest value be averaged for 20 quarters.*

We consider first the contention that the board erred in refusing to average the immediate harvest value for 20 quarters. The statutory mandate is clear; it expressly requires that the immediate harvest value be averaged for 20 quarters. The board supports its failure to do so upon subdivision (c) of section 434.5. That subdivision provides: "Commencing January 1, 1977, the board shall collect such data as may be necessary to accurately value timberland pursuant to subdivision (b)." The board argues that 20 quarters had not passed from January 1, 1977, to the time of the adoption of rule 1025, and therefore it was only required to use an average immediate harvest value for 10 quarters.

We must disagree with the board's position. This is not a case where compliance with the statutory terms is impossible. The board based its decision upon a letter from its legal counsel in which the legislative selection of 20 quarters was opined to be an oversight. The letter goes on

to state "although we understand that immediate harvest values for 10 quarters prior to the second quarter of 1977 could be estimated upon the basis of information in assessors' records, since immediate harvest values as such were not reported to the assessors for those quarters, and since estimates of such values would be based, in large part, upon subjective judgments, we believe that the use of available immediate harvest values is preferable." At trial plaintiffs' witness, a licensed forester, testified that immediate harvest values for the full 20 quarters could be derived from information available to the board. He further testified that he had computed such values and put his figures in evidence. The board's witness agreed that such values could be estimated, but disliked reliance upon estimate. He admitted, however, that the formula as written necessarily entails some estimation.

■ Where the language of a statute is clear, plain and unambiguous there is no room for construction and compliance with the language is required. (*Lockhart* v. *Wolden* (1941) 17 Cal.2d 628, 631 [111 P.2d 319].) ■ The language of section 434.5, subdivision (f) is clear that the immediate harvest value is to be averaged for 20 quarters. The record establishes that this could be done. Under such circumstances neither the board nor the courts may disregard the legislative directive. The board's belief that the 20 quarter requirement was the result of legislative oversight furnishes no ground to disregard the clear statutory language.

The board attempts to argue that there is a conflict in the language of subdivision (f) with the language of subdivision (c), of section 434.5. The board points out that subdivision (c) states that the board shall gather such data as may be necessary to accurately value timberland pursuant to subdivision (b). The board argues that the word "accurately" precludes reliance upon estimates.

All property valuation is of necessity an estimation. (See International Association of Assessing Officers, *Property Assessment Valuation* (1977) ch. 1, pp. 1-9.) The requirement is that the board gather such information as will enable it to accurately perform the estimations required in valuing the timberland. Nothing in subdivision (c) implies that the board may disregard the clear statutory formula for valuing such timberland. We conclude that the trial court correctly declared rule 1025 invalid for the failure of the board to average immediate harvest values for 20 quarters as required by statute.

B. *The board's consideration of old growth immediate harvest value is proper.*

■ We turn to the contention that the rule is invalid because the board considered old growth immediate harvest value as well as young growth immediate harvest value. Plaintiffs argued in the trial court that only young growth immediate harvest value may be considered because subdivision (b) of section 434.5 provides that timberland shall be valued "as if it were bare of forest growth, ..." Land which is bare of forest growth, plaintiffs argue, can only be used to grow young growth and therefore old growth immediate harvest value should not be considered. The trial court agreed with this reasoning. We do not.

The legislative intent behind the enactment of the 1976 timberland taxation system is clear. The Legislature intended to apply a yearly tax to the timberland and to delay tax upon the timber until the time of harvest, at which time a yield tax would be payable. In enacting such a scheme the Legislature defined "immediate harvest value" for purposes of the yield tax. (Rev. & Tax. Code, § 38109.) The term means: "... the amount that each species or subclassification of timber would sell for on the stump at a voluntary sale made in the ordinary course of business for purposes of immediate harvest." Such values "... shall be determined in a manner which makes reasonable and adequate allowances for age, size, quality, costs of removal, accessibility to point of conversion, market conditions and all other relevant factors as determined by the board." (Rev. & Tax. Code, § 38109.) Such a definition manifestly encompasses old growth as well as young growth, and nowhere does it appear that the Legislature intended to treat immediate harvest value any differently for purposes of the timberland tax.

The Legislature provided that the basic timberland valuation scheme should be the comparable sales approach, but that a maximum value should be set. That maximum value is the capitalization of the value of timberland as a productive component in the growth of timber. (Rev. & Tax. Code, § 434.5, subd. (f).) Timberland is a productive component of old growth as well as young growth. To exclude old growth immediate harvest value in the computation under section 434.5, subdivision (f) would ignore the productive value of the land in the production of old growth timber, and fail to capitalize the percentage of the old growth value produced by the land. Such a result is contrary to the expressed legislative intent.

The preliminary report of the Senate Select Committee, placed before the trial court by stipulation, explains that the modified productivity approach to the taxation of timberland was intended to include old growth harvest values. Throughout the report the committee used as its model timberland in a well-managed forest with full stocking of trees of all ages. The modified productivity approach ultimately enacted by the Legislature found its basis in this report. The report, which appears to be the only available indicator of legislative intent, fails to support the plaintiffs' contention that the Legislature intended to allow the use only of young growth immediate harvest value in the computation of the maximum capitalized value of timberland.

In view of all of the factors we have discussed, it does not appear that the Legislature intended "immediate harvest value" as used in Revenue and Taxation Code section 434.5, subdivision (f), to refer only to young growth immediate harvest value. Accordingly, we hold that the trial court erred in determining that property tax rule 1025 is invalid on the basis that it was calculated on the basis of old growth as well as young growth immediate harvest value.

The judgment is affirmed in part and reversed in part. Insofar as the declaratory judgment holds that property tax rule 1025, adopted on December 11, 1979, by the State Board of Equalization, is invalid because the immediate harvest values for the region were not averaged for 20 quarters previous to the adoption of the rule, the judgment is affirmed. However, insofar as it holds that the same property tax rule is invalid because the timberland values adopted for the region were not based only upon young growth immediate harvest values, it is reversed.

The appellant shall bear costs.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied November 19, 1981.