[Civ. No. 24712. Third Dist. Nov. 25, 1986.]

TROY GOLD INDUSTRIES, LTD., Plaintiff and Appellant, v.
OCCUPATIONAL SAFETY AND HEALTH
APPEALS BOARD, Defendant and Respondent;
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Real Party in Interest and Respondent.

380

COUNSEL

Biddle & Hamilton and Richard L. Hamilton for Plaintiff and Appellant.

O'Melveny & Myers, Scott H. Dunham and Kenneth E. Johnson as Amici Curiae on behalf of Plaintiff and Appellant.

Adolf Loeb for Defendant and Respondent.

Michael D. Mason and A. Margaret Cloudt for Real Party in Interest and Respondent.

Leonard & Carder and Robert Remar as Amici Curiae on behalf of Defendant and Respondent and Real Party in Interest and Respondent.

## OPINION

**SPARKS, J.**—In this appeal we are called upon to determine the statutory jurisdiction of the Division of Occupational Safety and Health (Division) over mines in California.

Labor Code section 6307 invests the Division with "the power, jurisdiction, and supervision over every employment and place of employment in this state" for the protection of the life, safety and health of employees. Labor Code section 6303, subdivision (a) in turn defines "place of employment" as "any place, and the premises appurtenant thereto, where employment is carried on, except a place the health and safety jurisdiction over which is vested by law in, and actively exercised by, any state or federal agency other than the division." On the other hand, Labor Code section 7952, a part of the Tom Carrell Memorial Tunnel and Mine Safety Act of 1972, mandates that "[t]here shall be within the division a separate unit of safety engineers trained to inspect all tunnel construction and mine operations." Labor Code 7953 further directs that "[s]ufficient manpower shall be maintained to provide for four annual inspections of underground mines, one inspection of surface mines or quarries annually, and six inspections of tunnels under construction annually."

At issue here is the interplay between these sections. Petitioner Troy Gold Industries, Ltd. (Troy Gold) was cited by the Division for safety violations at its mines. Troy Gold then unsuccessfully sought to invalidate the citations on the ground, among others, that the Division lacked jurisdiction over its mines. Troy Gold contends that the Division has been divested of jurisdiction over its mines because a federal agency is vested with safety jurisdiction

over the mines and is actively exercising its jurisdiction.[1] The Division argues that, notwithstanding Labor Code section 6303, the Tom Carrell Act invests it with plenary jurisdiction over underground mines in California. We conclude that Labor Code section 6303 is the controlling jurisdictional statute and that the Division therefore lacks jurisdiction over Troy Gold's mines during any period when the health and safety jurisdiction over those mines "is vested by law in, and actively exercised by, any state or federal agency other than the division." Since the Division concedes that the Mine Safety and Health Administration of the United States Department of Labor is both vested by law with safety jurisdiction over Troy Gold's mines and is actively exercising that jurisdiction, Troy Gold is entitled to the relief it seeks.

After adverse administrative adjudications, Troy Gold filed petitions for writs of mandamus in the superior court seeking to overturn the decisions by respondent Occupational Safety and Health Appeals Board (Board) in four groups of administrative appeals. Denied the writs by the lower court, Troy Gold appeals, claiming respondent Board and real party in interest Department of Industrial Relations, Division of Occupational Safety and Health, have no enforcement jurisdiction over mines, and further claiming the inspections from which these consolidated actions flow were made without warrants issued on probable cause. Finding merit in the threshold jurisdictional question, we need not reach the arguments involving the warrants. The judgments of the superior court will be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

Because the issue before us is a legal one in which the details surrounding the inspections and concomitant citations are irrelevant, we need sketch out the background only in its procedural purity. Division engineers inspected the Troy Gold's operations at the Blazing Star Mine in Calaveras County on various dates and at the nearby Woodhouse Mine on one occasion. In one instance, the engineers obtained an inspection warrant. (Lab. Code § 6314, subd. (b) [future undesignated section references are to the Labor Code]); otherwise, they made the inspections without warrants. As a result of those inspections the Division issued a series of citations for safety

---

[1]We have granted leave to the California Mining Association and the Associated General Contractors of California to file an amicus brief in support of Troy Gold. We have also granted leave to the International Longshoremen's and Warehousemen's Union, Local 30, to file an amicus brief in support of respondent Board and real party in interest Division, who have incorporated the amicus brief by reference in their consolidated brief. For convenience, amicus Local 30, the Board, and the Division are sometimes collectively referred to as "the Division" in the discussion.

violations. In general, these citations related to the lack of adequate ventilation and fresh air and to various other dangerous conditions in the mines, the factual validity of which is not challenged here. Troy Gold appealed the resulting citations to the respondent Board (§ 6600). The appeals were then consolidated into four groups.[2] For each group, a hearing was held before an administrative law judge (ALJ). (§§ 6604, 6605.) Each ALJ issued a decision upholding the citations. (§ 6608.) Troy Gold applied to the Board for reconsideration in each case (§ 6614); each time, the Board granted the application and then issued an opinion affirming the ALJ's decision. (§§ 6620, 6621.) Troy Gold then filed its four applications for writs of mandate in the Calaveras County Superior Court (§ 6627), which consolidated the four actions and denied the writ in each instance. This appeal followed.

The uncontested evidence presented on the jurisdictional issue can be briefly summarized. At the hearing before the ALJ in the appeal which ultimately became case number 12380, Troy Gold moved to dismiss the citation on the ground that under the terms of the Legislature's grant of jurisdiction to the Division active federal supervision of mining industry health and safety prevented the Division from exercising its residual jurisdiction. In support of the motion, Troy Gold adduced documentation showing regular Federal inspections in 1979-1981 and federal citations issued as a result of violations uncovered during the inspections. Troy Gold's witnesses, a supervisory inspector and a field inspector for the United States Department of Labor, Mine Safety and Health Administration (MSHA), both testified to the MSHA's ongoing active supervision of health and safety in the mining industry in general and at Troy Gold's places of business in particular. Ultimately, the motion was denied in the decision by the Board.

At the hearing before the ALJ in the appeal involved in case number 12379, Troy Gold made an identical motion to dismiss based on the evidence in the previous case, which was admitted by stipulation of the parties. At the hearing before the ALJ in the appeal underlying case number 12252,

---

[2]On May 16 and July 18, 1979, the Division inspected Blazing Star Mine and issued citations appealed in Board cases numbered 80-R2D9-740 through 742. These citations were the subject of superior court case number 12252. On April 10, 1979, an inspection of Blazing Star Mine resulted in the citations appealed in Board cases numbered 79-R2D9-1154 and 1155, which were at issue in superior court case number 12378. On August 28, 1981, the Division inspected the Woodhouse Mine, subsequently issuing a citation. On August 4, 1981, the Division inspected the Blazing Star Mine and issued a citation. Troy Gold appealed these citations in Board cases numbered 81-R2D9-1204 and 1302 which ultimately became the subject of superior court case number 12379. Finally, the Division inspected Blazing Star Mine on June 17, 1981. The resulting citation was appealed in Board case number 81-R2D9-900, which was the subject of superior court case number 12380.

Troy Gold also made the same motion to dismiss, but based it on testimony of one of its officials describing the inspections by MSHA personnel. The Board, not unexpectedly, did not find itself divested of jurisdiction and denied the motions to dismiss in both appeals. As for case number 12378, no motion to dismiss was made, nor was any jurisdictional evidence introduced at the agency level. However, Troy Gold included the jurisdictional issue in its petition for writ of mandate and requested the trial court take judicial notice of the jurisdictional evidence and findings set forth in the Board's decision in the appeal underlying case number 12379.[3]

The trial court issued a statement of decision common to the four actions on the jurisdictional question. There it found that the MSHA actively exercised health and safety regulatory and inspection powers over the mining industry. However, the trial court interpreted the statutes defining the jurisdiction of the Division as nevertheless permitting replicative enforcement by the Division in addition to that of the MSHA.

## DISCUSSION

Before the main issue takes center stage, we offer as a curtain raiser a precis of the organization of the statutory scheme involved in this appeal. In 1973, the Legislature enacted the California Occupational Safety and Health Act (Stats. 1973, ch. 993, § 6, p. 1918), which reorganized division 5 of the Labor Code (§ 6300 et seq.). Part One (§§ 6300-6711) contains general provisions which: define the Division's jurisdiction, powers, and duties; define an employer's duties under the act; set out the procedure for appealing a citation issued by the Division; spell out the penalties for violations and a means for enforcing them; designate miscellaneous safety standards and types of employment requiring permits; and provide for a system of temporary variances. Part Two (§§ 6800-7000) defines the Division's jurisdiction over railroads and provides safety standards for the railroad industry. Part Three (§§ 7100-7357) mandates safety standards for buildings under construction, elevators, window cleaners, and aerial passenger tramways. Part Four (§§ 7500-7501) requires telephones for underground mines (a vestigial part apparently duplicative of the later-enacted § 7963). Part Five (§§ 7600-7611) mandates safety standards for ships and vessels. Part Six (§§ 7620-7771) specifies safety standards for tanks and

---

[3]It is to state the obvious that subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel, so the issue may be raised at any time (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 10, p. 374; *Mumaw* v. *City of Glendale* (1969) 270 Cal.App.2d 454, 459-460 [76 Cal.Rptr. 245]), and that lack of subject matter jurisdiction below does not divest this court of appellate jurisdiction to so rule. (2 Witkin, *op. cit. supra,* Jurisdiction, § 12, pp. 377-378.)

boilers. Part Seven (§§ 7800-7803) requires employers to make available fire extinguishers for any volatile flammable liquids present in the workplace. Part Eight (§§ 7900-7915) provides for permits and inspections of amusement rides. Part Nine (§§ 7950-8004), also known as the Tom Carrell Memorial Tunnel and Mine Safety Act of 1972, mandates, as we have already noted, safety standards for the construction of tunnels and the operation of mines, directs the Division to maintain a separate unit of mine and tunnel inspectors, and specifies the number of inspections to be conducted annually. Finally, Part Ten (§§ 9000-9061) directs the Division to develop standards for carcinogens in the workplace and provides otherwise for carcinogens.

It is against that background that this appeal is to be reviewed. The Legislature has vested the Division with broad potential jurisdiction. "The division has the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary to adequately enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of life, safety, and health of every employee in such employment or place of employment." (§ 6307) Apparently mindful of the need to allocate state resources efficiently, the Legislature limited the jurisdiction of the Division by defining a "place of employment" as "any place, and the premises appurtenant thereto, where employment is carried on, *except a place the health and safety jurisdiction over which is vested by law in, and actively exercised by,* any state or federal agency other than the division." (§ 6303, subd. (a), italics supplied.)

The California Supreme Court had occasion to explore the reach of this limitation on the Division's jurisdiction in *United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762 [187 Cal.Rptr. 387, 654 P.2d 157]. There the issue was whether the Division had jurisdiction over the occupational safety of employees in a ground maintenance facility at an airport. The court ruled that the jurisdiction of the Division is suspended only where "the other agency in the picture—like the division itself—has been *specifically mandated* to regulate the working environment within its aegis for the protection of the employees' health and safety" (*id.,* at p. 770, italics in original) and where the other agency *actively exercises* that authority. Section 6303, subdivision (a), had previously not required that the jurisdiction of the other agency actually be exercised. The statute was amended in 1978 to provide that the jurisdiction of the other agency must be "actively exercised." (Stats. 1978, ch. 1248, § 1, p. 4060.) The amendment was made, the court observed, "to insure that, as a general matter, the division would not be displaced by the mere existence of unused authority in another agency." (*Id.,* at p. 776.) Since the Federal Aviation Adminis-

tration was not actively exercising occupational safety jurisdiction over ground maintenance facilities, the Division was not divested of jurisdiction over them.

In the three decisions in this case where it reached the issue, the Board found the MSHA was specifically vested with jurisdiction over health and safety regulation and inspection of the mining industry, a mandate which the MSHA actively exercised. Despite this finding, the Board nevertheless ruled it had concurrent enforcement jurisdiction. ■ When the sufficiency of the evidence is challenged in an appeal from a judgment denying a writ of mandate in an administrative mandate proceeding involving the Board, "the function of the reviewing court on appeal from the judgment is the same as that of the trial court, that is, to review the administrative decision to determine whether it is supported by substantial evidence on the whole record." (*Steve P. Rados, Inc.* v. *California Occupational Saf. & Health Appeals Bd.* (1979) 89 Cal.App.3d 590, 595 [152 Cal.Rptr. 510]; see also § 6629, subd. (d).) All parties agree the dichotomous test of the statute and the *United Air Lines* case has been satisfied by Troy Gold's showing before the Board, so we may safely say this finding is supported by the substantial evidence in the whole record that the MSHA actively exercised, at all times pertinent to the collected cases before us, the jurisdiction conferred upon it by the Mine Safety and Health Act of 1977 (30 U.S.C. § 801 et seq.) to regulate and inspect mines for occupational health and safety.

Thus it is not the sufficiency of the evidence that is challenged here. The real dispute between the parties centers on the Board's resolution of the legal question about the effect that the MSHA's active exercise of mining jurisdiction has on the Division's jurisdiction.[4] ■ It should be noted at the outset we are not dealing with a question of federal preemption here: Congress has explicitly granted concurrent jurisdiction to the states to act in mining health and safety matters. (30 U.S.C. § 955.) Rather, it is a question of the extent to which the California Legislature intended the Division to duplicate the efforts of other agencies in the arena of occupational

---

[4]Contrary to the suggestion by the Division, the Board's interpretation of its own jurisdiction is not controlling. "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless 'Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.'" (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697], citations omitted.) Moreover, since the issue relates solely to a legal question, we are not bound by the trial court's resolution of the question. (*Internat. Assn. of Fire Fighters* v. *City of San Leandro* (1986) 181 Cal.App.3d 179, 183 [226 Cal.Rptr. 238]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

health and safety. Troy Gold maintains that since the MSHA has satisfied the *United Air Lines* test, the plain meaning of section 6303 suspends the Division's jurisdiction to act in the mining industry. The Division counters by arguing that the specific Tom Carrell Act statutes control over the general jurisdictional provisions in sections 6303 and 6307. In its eagerness to gain our consideration of a compendium of extrinsic legislative materials, the Division does not make it clear precisely why we need to look beyond the text of the statutes in question. We glean from the form of its argument that the Division first contends that the plain fabric of section 6303 has been embroidered with a different meaning in light of the provision's history (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 846-851 [59 Cal.Rptr. 609, 428 P.2d 593]), and that it alternatively contends the more specific provisions of the Tom Carrell Act, which mandate a separate unit of inspectors for mines and tunnels (§ 7952) and a certain number of annual inspections of mines and tunnels (§ 7953), must be construed as an independent grant of jurisdiction. This grant, so the contention goes, conflicts with the general jurisdictional grant in sections 6303 and 6307 and thus must control in light of the various legislative materials. (See *Wescott* v. *County of Yuba* (1980) 104 Cal.App.3d 103, 106 [163 Cal.Rptr. 385]; *In re Ward* (1964) 227 Cal.App.2d.369, 374-375 [38 Cal.Rptr. 650].) For the reasons which follow, we reject the Division's efforts to impart a meaning to section 6303 contrary to its express terms.

■ We are enjoined to "give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it." (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119], and cases cited there.) Consequently, if "the language of the provision is free of ambiguity, it must be given its plain meaning; rules of statutory construction are applied only where there is ambiguity or conflict in the provisions of the . . . statute, or [where] a literal interpretation would lead to absurd consequences." (*Castaneda* v. *Holcomb* (1981) 114 Cal.App.3d 939, 942 [170 Cal.Rptr. 875]; *accord, Shippen* v. *Department of Motor Vehicles* (1984) 161 Cal.App.3d 1119, 1124 [208 Cal.Rptr. 13]; *Soper-Wheeler Co.* v. *State Bd. of Equalization* (1981) 124 Cal.App.3d 913, 919 [177 Cal.Rptr. 515].)

■ It is true, as stated by the Division, that the Supreme Court in the *United Air Lines* case noted "that the Labor Code is to be liberally interpreted to achieve a safe work environment." (*United Air Lines, supra,* 32 Cal.3d at p. 771) and that it found that the Legislature amended section 6303 in 1978 to read in its present form "to broaden the division's jurisdiction . . . ." (*Id.,* at p. 776.) But nothing in these pronouncements can fairly be

construed as suggesting that the plain meaning of the statute ought to be ignored.

As for the argument in favor of a legislatively approved gloss on this plain language, it fails in myriad ways. First, before we may presume the Legislature intended to incorporate a judicial or administrative interpretation, it is necessary for the Legislature either to reenact a statute verbatim or use language identical to that which had been interpreted. (*County of Sacramento, supra,* 66 Cal.2d at p. 850.) Here, by contrast, the language at issue was added for the first time in 1978 and has not been reenacted in any form. Second, there has not been a judicial interpretation which supports the Division's present argument for replicative enforcement. (See *United Air Lines, supra,* 32 Cal.3d at pp. 768-769.) Finally, there was no consistent body of administrative interpretations such that the Legislature can be said to have ratified replicative enforcement; in fact, if the administrative practice prior to the 1978 amendment can be said to show anything, it indicates a position against dual enforcement. (See *id.,* at p. 764, fn. 2.) Thus, the intent of the Legislature, which we derive from the unambiguous language of section 6303, is for the Division to have potential plenary jurisdiction over the occupational health and safety of the place of employment except where such jurisdiction would duplicate the efforts of another agency. (*Id.,* at p. 770.) As a result, there is nothing absurd about a literal interpretation of section 6303 which would divest the jurisdiction of the Division over mines so long as the MSHA is actively exercising its own jurisdiction. A court must, where reasonably possible, harmonize statutes by reconciling seeming inconsistencies in them, giving effect to all their provisions. (*Hough* v. *McCarthy* (1960) 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276]; *Wescott, supra,* 104 Cal.App.3d at pp. 109-110.) In light of the purpose we have found behind section 6303, it is reasonable to interpret the directory provisions of sections 7952 and 7953 as only having effect where no other agency is actively involved. This interpretation does not render those sections nugatory because they continue to exist in abeyance until such time that the Division must again exercise jurisdiction over the place of employment of mining if and when the MSHA no longer actively exercises its jurisdiction. Moreover, the Division still retains jurisdiction over the "employment" of mining. Section 6303, by its terms, only divests the Division of jurisdiction over the "place of employment" and not the "employment" itself. The statutory scheme uses those phrases in the disjunctive and separately defines them. Indeed, the very section which defines "place of employment" and which divests the Division of jurisdiction over that place, separately defines "employment" without any divestment of jurisdiction. Section 6303, subdivision (b) defines "employment" to include "the carrying on of any trade, enterprise, project,

industry, business, occupation or work, including all excavation, demolition, and construction work, or any process or operation in any way related thereto, in which any person is engaged or permitted to work for hire except household domestic service." No statute purports to divest the Division of jurisdiction over the life, safety and health of every employee in every employment. Thus, to the extent that the issue relates to the safety the "employment" of mining as opposed to the safety of "place of employment" of the miners, the Division retains jurisdiction. Finally, because no other agency is either vested with or is actively exercising jurisdiction over tunnel construction, the provisions of the Tom Carrell Act will continue to have effect in the tunnel construction industry.

We turn to the Division's alternative effort to create an ambiguity in the statute requiring resort to extrinsic interpretive aids. The Division asserts there is a conflict between the general jurisdictional grant of sections 6303 and 6307 and the what it calls the "specific jurisdictional grant" found in sections 7952 and 7953. We disagree because we perceive no independent grant of jurisdiction by the latter two statutes and thus find the Division's argument of an independent grant of jurisdiction in the Tom Carrell Act to be untenable.

First, the cited Tom Carrell statutes do not mention jurisdiction and hence do not on their face purport to be a grant of jurisdiction. Second, where the Legislature has intended for a different jurisdictional definition to apply to a particular part of the California Occupational Safety and Health Act, it has done so expressly. Thus, for example, the Legislature separately defined the jurisdiction of the Division over railroad employees in section 6800 in Part Two and explicitly recited that "[i]t is the intent of the Legislature that the Division of Occupational Safety and Health be granted jurisdiction over the occupational safety and health of all employees of rail rapid transit systems, electric interurban railroads, and street railroads." (Stats. 1982, ch. 338, § 1, p. 1641.) Third, to accept the Division's argument equating directory provisions in the Tom Carrell Act with jurisdictional grants would be to render the jurisdictional limitation in section 6303 meaningless, because division five of the Labor Code is replete with directory provisions throughout its ten parts.[5] Fourth, the authority cited in the regulations under

---

[5]By way of illustration, see for example section 7110 (the Division "shall enforce this article"); section 7158 (the Division "shall enforce the provisions of this article"); section 7204 (the Division "shall inspect all construction elevators"); section 7267 (the Division "shall enforce this article"); section 7304 (the Division "shall cause all elevators to be inspected at least once each year"); section 7332 (the Division "shall enforce the provisions of this chapter"); section 7344 (the Division "shall cause all aerial passenger tramways to be inspected at least two times each year"); section 7681 (the Division "shall inspect or

which the Division issued the citations involved in this appeal comes from the general provisions of Part One, not the provisions of the Tom Carrell Act in Part Nine. (See Cal. Admin. Code, tit. 8, §§ 342, 2305.1, 2305.2, 2340.23, 3200, 5162, 6950, 6962, 7010, 7038, 7070, 7098, 7104, 7232.) In short, the Tom Carrell Act does not provide an independent grant of jurisdiction, and hence there is no conflict between the statutory provisions. Consequently, we need not resort to consideration of any of the extrinsic legislative materials.[6]

■ The Division has expressed its concern here over the fate of California miners in the absence of its exercise of jurisdiction. That concern

---

cause to be inspected each installed tank at least every five years"); section 7682 (the Division "shall inspect or cause to be inspected each installed fired boiler . . . at least every year"); sections 7902 and 7904 (the Division shall make rules for the inspection of amusement rides and shall report to the Division of Fairs and Expositions a summary of all inspections).

[6]For that reason, the motions for judicial notice of the materials are denied. Although it may not be of any solace to the Division, we have nevertheless examined the proffered materials for any clear indication of legislative intent and find none. As there was no active federal regulation of mining health and safety until 1977, materials showing California's historic regulation of the industry since 1918 are irrelevant, as are any legislative materials relating to the enactment of the Tom Carrell Act in 1972 or the California Occupational Safety and Health Act in 1973 (or, for that matter, the tangential assertion that the Tom Carrell Act's mining inspections were a valid exercise of the state's police power in furtherance of the workers' compensation program). Furthermore, a single unenacted bill which would have explicitly restricted the Division's mining jurisdiction is meaningless as an expression of legislative intent as are statements of the individual legislators in favor of the rejected bill or statements of the Legislative Analyst accompanying the failed bill suggesting the need for an explicit divestment of jurisdiction. (*Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 243, 248, fn. 4 [136 Cal.Rptr. 508]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]; see also *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-700 [170 Cal.Rptr. 817, 621 P.2d 856]. See generally, 2A Sutherland, Statutory Construction (4th ed. 1984) § 48.13, p. 329-330.) "The light shed by such unadopted proposals is too dim to pierce statutory obscurities," much less to create them. (*Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.*, *supra*, 263 Cal.App.2d at p. 58.) The remaining materials are simply ambiguous: annual funding of the Mining Unit could simply be for the supervision of tunnel construction, which is also within that unit's aegis; the joint resolution asking federal authorities to recede from mining does not indicate what the Legislature intended to do if the resolution were ignored, and it is completely plausible they intended to recede from mining if the MSHA insisted on its jurisdiction; nor can any coherent inference be drawn from the fact the Legislative Analyst recommended deleting 5.5 positions from the Mining Unit which were restored by the Legislature, vetoed by the Governor, and ultimately restored "administratively." The only material from which any intent may be gleaned is the reports to the Legislature of the Division's continued mining activities, to which the Legislature never reacted. However, as legislative inaction is "'a weak reed upon which to lean'" (2A Sutherland, *op. cit. supra,* § 49.10, p. 407), and as there has only been a period of a few years since the 1978 amendment, we do not feel sufficient probity in the Legislature's silence has been established to demonstrate ratification of the Board's actions. Thus, none of these materials are helpful on the question of intent.

must addressed to Legislature. If the Legislature indeed feels that the MSHA is inadequately exercising its jurisdiction over the safety of California mines, it is a simple matter for it to amend the Labor Code to provide explicit authorization for replicative enforcement by the Division. Meanwhile, since the Division was without jurisdiction over Troy Gold, the citations issued by it are nullities.

The judgments of the superior court are reversed, and the causes remanded to the superior court with directions to enter new and different judgments granting the requested writs of mandate in each case.

Evans, Acting P. J., and Blease, J., concurred.

A petition for a rehearing was denied December 19, 1986.